**UNITED STATES of America,
Appellant,**

v.

**J. Alan OLMSTEAD, Appellee.**

**No. 82–5194.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 10, 1982.

Decided Jan. 25, 1983.

---

William G. Otis, Sp. Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Joseph J. Aronica, Clarence H. Albright, Jr., Asst. U.S. Attys., Alexandria, Va., on brief), for appellant.

J. Frederick Sinclair, Alexandria, Va. (Cohen & Annand, P.C., Alexandria, Va., on brief), for appellee.

Before WIDENER and HALL, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

J. Alan Olmstead was indicted on five counts of income tax fraud. Prior to trial he moved to suppress statements made by him to Special Agent Jon DeVries of the Internal Revenue Service on the ground that the statements were not voluntary. He also sought suppression of documents he had furnished the agent. The district court, after conducting a hearing, granted Olmstead's motion. The government appealed. 18 U.S.C. § 3731.

Concluding that the statements and the delivery of the documents were voluntary, we reverse the order of the district court.

I

Agent DeVries was investigating Roy Carlson, a former business associate of Olmstead's. In the course of his investigation, he contacted Olmstead and requested a personal interview. Olmstead asked the agent whether he was the subject of the investigation. The agent refused to answer the question in a telephone conversation, and Olmstead agreed to be interviewed.

The next day, Olmstead phoned the agent to cancel the interview. Again Olmstead requested clarification of his status in the investigation, and again the agent refused to answer. Olmstead then asked what obligation he had to furnish information. The agent responded that as a witness he could be subpoenaed, but as a subject of an investigation he could not be made to incriminate himself. Olmstead again agreed to meet with the agent.

The agent went to Olmstead's home at the appointed time for the interview. At the outset, the agent began to read the *Miranda* warnings. Olmstead stopped him, saying "I know all that." Nevertheless, the agent persisted and advised Olmstead of his rights. Olmstead again requested a clarification of his status. The agent answered that the subject of the investigation was Roy Carlson and that Olmstead was not then a subject. Olmstead then requested assurances that he would not become the subject of the investigation in the future. The agent replied that Olmstead was not then a subject.

Olmstead, dissatisfied with this answer, called his wife into the room to act as a witness. The agent read her the *Miranda* warnings. Olmstead again asked for a clarification of his status in future investigations. He received the same answer. Concluding that the agent was not going to give him the assurances he sought, Olmstead said that he would talk on the basis that his statements and documents not be used against him in any way. The agent did not respond to this proposal. Nevertheless, Olmstead then answered questions for approximately four hours and consented to furnish documents which the agent request-

ed. At a later meeting, Olmstead turned the documents over to the agent.

Nearly two years later, Carlson entered into a plea bargain with the government and offered to testify against Olmstead. Olmstead was subsequently indicted. He moved to suppress the statements made during his interview and the documents he furnished the agent.

The district court noted that Olmstead was "a knowledgeable person." The court found that Olmstead was aware of his rights, aware of the distinction between subjects and witnesses, and was advised of his rights. The court also observed that Olmstead was more than a witness in the government's investigation. It did not, however, find that he was a subject of the investigation at the time of the interview.

The court based its suppression on the condition that Olmstead laid down at the interview. While recognizing that an individual cannot dictate how his statements may be used by law enforcement officials, the court ruled that the agent had an obligation to inform Olmstead that he could not accept such conditions. Consequently, the court held that Olmstead's statements were not voluntary and thus neither the statements nor the documents, which the court described as the fruits of the statements, could be used against him.

## II

■ Although we accept the district court's findings pertaining to the circumstances of the interview, we believe that it did not apply pertinent law to determine whether the statements were voluntary. As a reviewing court, it is our duty "to examine the entire record and make an independent determination of the ultimate issue of voluntariness." *Davis v. North Carolina,* 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895 (1966). No case precisely on point has been called to our attention, but courts have frequently reiterated the principles governing admission of defendants' statements. Whether a statement is voluntary must be resolved by assessing the maturity, intelligence, and

knowledge of the accused, and the circumstances of the interrogation. In the light of this factual background, the ultimate test of voluntariness is whether "the confession [is] the product of an essentially free and unconstrained choice by its maker" or whether "his will has been overborne and his capacity for self-determination critically impaired." *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961); *see generally, Schneckloth v. Bustamonte,* 412 U.S. 218, 223–27, 93 S.Ct. 2041, 2045–48, 36 L.Ed.2d 854 (1973). Physical coercion need not be shown to establish that a statement is involuntary. Fraud, deceit, or trickery, even silence when there is a duty to speak, may suffice. *See United States v. Prudden,* 424 F.2d 1021, 1032 (5th Cir.1970). But existence of these factors and their psychological effect must also be assessed against the factual background of the accused and the interrogation. *Frazier v. Cupp,* 394 U.S. 731, 737, 739, 89 S.Ct. 1420, 1423–25, 22 L.Ed.2d 684 (1969); *United States v. Wertz,* 625 F.2d 1128, 1133–34 (4th Cir.1980). Essentially the same principles apply to a defendant's production of documents. *See Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48.

## III

■ Olmstead is a 40-year old businessman with a college education. He did graduate work in accounting and economics. At various times during his business career, he prepared tax returns, organized and taught a course in small business accounting, and wrote a pamphlet about tax shelters. He has been the principal or a partner in several business enterprises. At the time of the interview, he said that he was acting as a fiduciary handling other people's assets. Olmstead was aware that he was more than a disinterested witness, for he knew that the IRS was conducting a criminal investigation encompassing tax returns of firms in which he and his former business associate had been involved. In sum, the evidence discloses that Olmstead is a mature, intelligent businessman, who had knowledge of the tax laws and accounting and of the subject of the investigation.

The interview was conducted in Olmstead's home in the presence of his wife. The agent practiced neither fraud nor deceit. He truthfully explained the purpose of the interview and that only Olmstead's former business associate was the target. He refused to give assurances that Olmstead would not become a target in the future. Olmstead knew that he could refuse to make any statements and that he could terminate the interview at any time. He heard the agent twice explain that anything he said could be used against him. After saying that he would talk only on the basis that his statements and documents would not be used against him, Olmstead did not expressly ask the agent to agree to the condition that he sought to impose.

The agent remained silent. He neither said nor did anything to indicate that he was retreating from his stance that anything Olmstead said could be used against him. He did not retract his refusal to give assurances that Olmstead would not become a target in the future. At this point, Olmstead could have terminated the interview. Instead, he proceeded to furnish information that tended to place the responsibility for the questioned tax returns on his former business associate.

Viewed in the light of this factual background, which depicts both Olmstead's characteristics and the nature of the interview, we find that Olmstead's will was not overborne and his capacity for self-determination was not critically impaired by the agent's silence. The totality of the circumstances discloses that, despite the agent's silence, Olmstead's statements were "the product of [his] essentially free and unconstrained choice . . . ." *See Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). Accordingly, we conclude that Olmstead's statements and his subsequent delivery of several documents satisfied the test for voluntariness. The order of suppression is reversed.