CMEM, INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent CMEM, Inc. v. Commissioner
Docket Nos. 1667-88, 1548-89, 13579-89
United States Tax Court
T.C. Memo 1991-467; 1991 Tax Ct. Memo LEXIS 516; 62 T.C.M. (CCH) 806; T.C.M. (RIA) 91467; September 24, 1991, Filed *516 Petitioners allege that respondent violated petitioners' constitutional rights in gathering information during an examination of petitioners' returns for various years. For a remedy, petitioners have moved for us to suppress all allegedly "tainted" evidence and to issue protective orders against respondent's attempts at discovery. Held, petitioners' motions will be denied; respondent's discovery motions will be granted. Mitchell S. Fuerst, Robert J. Alter, Richard J. Sapinski, and Herbert L. Zuckerman, for the petitioners. Robert N. H. Christmas and Curt M. Rubin, for the respondent. HALPERN, Judge. HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION The following motions are before the Court: (1) respondent's motion to compel responses to respondent's interrogatories, filed July 2, 1990; (2) respondent's motion to compel responses to respondent's first request for production of documents, filed July 10, 1990; (3) petitioners' motion to suppress respondent's use of information obtained in violation of the Fourth Amendment to the Constitution, filed July 24, 1990; (4) petitioners' motion for protective order as to respondent's interrogatories, filed *517 July 24, 1990; (5) petitioners' motion for protective order as to respondent's first request for production of documents, filed July 24, 1990; (6) petitioners' motion for protective order as to respondent's request for admissions, filed July 24, 1990; and (7) petitioners' motion for protective order as to respondent's second interrogatories to petitioners, filed July 24, 1990. This opinion addresses those motions. FINDINGS OF FACT Certain facts have been stipulated and are found accordingly. By this reference, the stipulation of facts and attached exhibits are incorporated herein. At the time of filing the petitions in this case, CMEM, Inc. (CMEM) maintained its principal place of business on Staten Island, in New York City, and, as its primary business, operated the Golden Dove Diner (Golden Dove), also located on Staten Island. Michael Theodoulous, and his wife Evangelia Theodoulou (the Theodoulous), resided on Staten Island when they filed the petition in this case. The story begins with Donald Remstein (Remstein), an Inspector with the Internal Security Division of respondent's Inspection Service. Throughout much of 1984, Remstein participated in a large-scale investigation *518 into attempts at corruption of Internal Revenue Service employees dealing with diners in the New York metropolitan area. At the center of the investigation was a Greek Orthodox cleric named Eleftherios Stravakis (Stravakis), who had acted as an intermediary in a number of bribery attempts. Remstein determined to see whether the pattern of corruption centering on Stravakis was pervasive. [2] Seeking diners with legal difficulties (on the assumption that they would be more likely to attempt a bribe), Remstein contacted the Immigration & Naturalization Service (INS) on July 23, 1984. The INS suggested the Golden Dove as a possible target for investigation. Previously, the INS, suspecting the Golden Dove of employing illegal aliens, had conducted two successful raids, apprehending *519 several illegal aliens on each raid. On January 10, 1984, INS agents again returned to the Golden Dove to investigate whether the diner was engaged in harboring illegal aliens, a criminal offense. However, the agents were denied access to the premises because they had no search warrant. The INS was unable to establish probable cause to support a search warrant at that time. On January 25, 1984, the INS notified the Internal Revenue Service that the Golden Dove might be paying employees off the books, but there is no evidence that the Internal Revenue Service ever followed up on that tip. The INS did not seek a joint investigation with the Internal Revenue Service at that time. When Remstein contacted the INS on July 23, 1984, he spoke with one Michael Cutler (Cutler). Remstein discussed with Cutler the possibility of a "joint investigation," which apparently prompted the INS to suspend plans to plant an INS informant at the Golden Dove. Remstein contacted the INS a second time on August 24, 1984, informing the INS that he had requisitioned CMEM's 1983 return and was arranging for an examination of that return. Remstein told the INS that it could continue or cease its investigation *520 as it wished, but that respondent's investigation might provide the INS with information in the future. On September 11, 1984, Remstein and the INS discussed a joint effort to plant an informant at the Golden Dove, but that plan never materialized. On September 26, 1984, the INS closed its Golden Dove file for lack of leads, with the understanding that it would reopen the file if the Internal Revenue Service's examination provided any useful leads. Apparently, it did not; there is no evidence that the file ever was reopened or that any prosecution for violation of the immigration laws subsequently was instituted. Upon receiving CMEM's return, Remstein conducted an informal inquiry into CMEM's affairs and, on September 20, 1984, requested of the Chief, Examination Division (Manhattan District), that CMEM's return be reviewed for a possible cooperative examination with Remstein's office (Inspection). The return was selected for examination and assigned to revenue agent Alex Malichiwski (Malichiwski) on October 22, 1984. Malichiwski started working on the CMEM case on January 17, 1985, and, pursuant to the instructions contained in the file that he received, contacted Remstein. *521 On January 18, 1985, Remstein met with Malichiwski, telling Malichiwski to watch for bribes and reacquainting him with the proper procedures for responding to a bribe offer. Remstein also informed Malichiwski (mistakenly) that the INS was then investigating the Golden Dove for harboring illegal aliens, intimating that this might be a sensitive subject for petitioners and that Malichiwski should be alert to that fact. On January 30, 1985, Malichiwski and Bernard Reis (Reis), CMEM's accountant, made an appointment to meet at the Golden Dove on February 26, 1985, to commence the examination. However, before he began examining the diner's records on February 26, Malichiwski visited the Golden Dove on February 15 and February 22, 1985, to familiarize himself with the diner's premises and operations. Twice during Malichiwski's examination, Reis asked Malichiwski about the initiation of the audit. Malichiwski's notes indicate that he was asked: "how [the] case was picked for audit?" and "what triggered [the] audit?" Malichiwski responded by saying that the audit was chosen "through the system" or that it "came down through channels." During the course of the audit, Malichiwski inquired *522 about the employment of illegal aliens and inspected the diner premises, taking note of any indications that the Golden Dove might be employing or harboring illegal aliens. By early April 1985, Malichiwski had substantially completed his examination of the Golden Dove's records, but he continued to obtain information from banks, car dealerships, and other third parties. On July 1, 1985, responsibility for the 1982 returns of both CMEM and the Theodoulous was transferred to Malichiwski from Revenue Agent John Keller. Based upon an informant's tip, those returns had been selected for an examination independently of the investigation of CMEM's 1983 returns. On numerous occasions throughout the examination, Malichiwski contacted Remstein to inform him of how the examination was progressing. Remstein, however, did not actively involve himself in the examination, nor is there any evidence that the INS participated in the investigation or that it ever received any information from respondent. In March 1987, Malichiwski referred the case to respondent's Criminal Investigation Division (CID) for an investigation of possible criminal fraud in connection with petitioners' returns, but *523 the CID eventually dropped the criminal investigation. No tax-related criminal charges have been brought against any of the petitioners. There is no evidence that petitioners made any bribery attempts in connection with respondent's examination of them. All of Remstein's records with regard to the investigation of petitioners have been destroyed, apparently pursuant to respondent's normal record retention policies. Respondent issued notices of deficiency to CMEM on December 14, 1987, for its 1984 taxable year; on December 14, 1988, for its 1985 taxable year; and on May 24, 1989, for its 1982 and 1983 taxable years. Respondent issued notices of deficiency to the Theodoulous on May 24, 1989, for their 1982, 1983, and 1984 taxable years. Petitions were filed January 26, 1988, January 23, 1989, and June 15, 1989, and answers were filed March 25, 1988, March 27, 1989, and August 17, 1989. On January 26, 1990, prior to initiating formal discovery, respondent sent a letter to petitioners informally requesting documents and information. See Rule 70(a); [3]Branerton v. Commissioner, 61 T.C. 691 (1974). Petitioners did not comply. Subsequently, on March 2, 1990, respondent initiated *524 formal discovery by serving on petitioners written interrogatories pursuant to Rule 71. On May 31, 1990, respondent served a request for production of documents pursuant to Rule 72. On June 25, 1990, respondent served a request for admissions pursuant to Rule 90 and served a second set of written interrogatories. Petitioners did not comply with any of those requests. The motions that are the subject of this proceeding followed. In support of all of their motions mentioned above, petitioners allege that: (1) respondent's determination of deficiency was based upon information obtained through the affirmative misrepresentations and deceit of respondent's investigative agent; (2) the audit of petitioners was initiated as a cover-up for a warrantless search of petitioners' business premises after INS *525 officials had been denied access; (3) the investigative agent conducting the initial audit was acting on the behalf of the INS to obtain information on the possible employment of illegal aliens without a search warrant; and (4) such actions constitute an unreasonable search, in violation of petitioners' Fourth Amendment rights. An evidentiary hearing was held on September 26, 1990, for the purposes of receiving evidence in connection with those motions. Facts sufficient to our decision have been laid out above and are found. OPINION Petitioners contend that respondent violated petitioners' constitutional rights in the methods he used to obtain the information supporting the notices of deficiency. For remedy, petitioners request that we apply the exclusionary rule and suppress that information. Petitioners also argue that we should not compel them to comply with respondent's requests for documents and information. Petitioners finally contend that, once the evidence supporting the notices of deficiency is suppressed, the notices no longer should be considered presumptively correct and the burden of going forward with evidence to prove the deficiencies should shift to respondent. *526 Petitioners offer four arguments in support of their motions before the Court: (1) that respondent violated the Fourth Amendment by abusing his statutory authority in conducting his investigation; (2) that respondent violated petitioners' Fourth Amendment rights by obtaining a consent search through fraud, trickery, and misrepresentation; (3) that respondent violated due process by violating his own procedural rules; and finally (4) that judicial integrity requires the Court to suppress evidence that was obtained through respondent's misconduct. Before reaching the question of remedies, we must first determine whether, in fact, there were any violations of petitioners' rights that would merit such remedies. We believe that there were no such violations. For simplicity's sake, each argument offered by petitioners will be discussed in turn. I The first argument in support of petitioners' motions is that respondent violated the Fourth Amendment by abusing his statutory authority to conduct civil tax investigations (his examination authority). Petitioners contend that respondent's examinations were used to gather evidence for a criminal prosecution by the INS and in furtherance *527 of respondent's investigation of diner-connected corruption. Therefore, petitioners reason, when respondent exercised his examination authority to obtain information for those criminal investigation purposes, he abused the authority granted him by section 7602. Petitioners argue that all information supporting the notices of deficiency was gathered pursuant to this "sham" civil audit and should therefore be suppressed as tainted evidence. Petitioners correctly argue that, in some circumstances, the use by respondent of his examination authority to gather information for a criminal prosecution could violate the taxpayer's Fourth Amendment protections against illegal searches and seizures. In Abel v. United States, 362 U.S. 217, 226, 230, 4 L. Ed. 2d 668, 80 S. Ct. 683 (1960), the Supreme Court warned that agencies charged with enforcement of the criminal laws cannot circumvent criminal constitutional restrictions by using civil, administrative procedures. In United States v. Genser, 582 F.2d 292 (3d Cir. 1978), the Court of Appeals confirmed that the Government cannot use civil, administrative procedures to obtain information for criminal purposes. With reference to an administrative summons issued *528 under section 7602, the Court of Appeals stated: "the IRS * * * may not act outside its statutory authority by garnering evidence in furtherance of a solely criminal investigation." United States v. Genser, 582 F.2d at 308. See also United States v. LaSalle National Bank, 437 U.S. 298, 57 L. Ed. 2d 221, 98 S. Ct. 2357 (1978); United States v. Powell, 379 U.S. 48, 13 L. Ed. 2d 112, 85 S. Ct. 248 (1964). Nevertheless, in exercising his examination authority, respondent is not foreclosed from, in the same exercise of that authority, pursuing suspicions of related criminal offenses. See United States v. LaSalle National Bank, 437 U.S. at 310-311 (section 7602(a) summons authority may be exercised in an investigation involving suspected criminal conduct as well as behavior that could be disciplined with a civil addition). Upon the recommendation of a criminal prosecution to the Department of Justice, however, respondent's summons authority is at an end. Id. at 311. Prior to a recommendation for prosecution to the Department of Justice, respondent must use his summons authority in good faith. Id. at 313. A good-faith exercise has several elements, including that the investigation for which a summons is issued will be conducted *529 pursuant to a legitimate propose, the inquiry may be relevant to that purpose, the information sought is not already within respondent's possession, and the administrative steps required by the Code have been followed. Id. at 313-314; United States v Powell, supra at 57-58. Respondent does not use his summons authority in good faith if an investigation has solely criminal purposes (determined by examining the institutional posture of the IRS). United States v. LaSalle National Bank, supra at 316. A taxpayer opposing enforcement of a summons bears the burden to disprove the actual existence of a valid civil tax determination or collection purpose by respondent. Id. The Supreme Court has described that burden as "heavy." Id. Also, the good-faith standard will not permit the IRS to become an information-gathering agency for other departments. Id. at 317. This is not a summons enforcement procedure. However, petitioners' argument is the same as would be made in a summons enforcement procedure, and the rules that we have discussed should serve us well in answering petitioners' Fourth Amendment claim. Petitioners have the burden of proof. See *530 id. at 316. [4] We will apply those rules by determining whether petitioners have carried their burden of showing that respondent was not using his examination authority in good faith in undertaking his examination of petitioners. If we determine that petitioners' have not carried their burden, then we will reject petitioners' claim that respondent abused his examination authority and thereby violated the Fourth Amendment. *531 We do determine that petitioners have not carried their burden. Petitioners contend that respondent had two illicit purposes behind his examination, which show bad faith. First, petitioners argue that respondent was using his examination authority solely to investigate criminal corruption. Second, petitioners argue that respondent improperly exercised his examination authority to investigate the criminal harboring of illegal aliens for the INS. We disagree, and conclude that respondent exercised his examination authority in good faith. Inspector Remstein apparently had corruption on his mind when he requested that CMEM's 1983 return be considered for a possible cooperative audit. However, had he not felt that the return had some audit potential, what point would there have been in the examination? Moreover, Remstein did not have the final say in whether or not the return would be selected for examination. That was up to the Chief, Examination Division, and we are not convinced that there were significant irregularities in the way Examination Division handled Remstein's request. Revenue agent Malichiwski conducted the examination, and there is no evidence that leads us to *532 conclude that he was instructed to "manufacture" a deficiency. Thus, we must conclude that the examination was not conducted solely for criminal purposes. See also section 7602(b) (the purposes for which a section 7602 examination may be undertaken include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws). [5] Petitioners have not carried their burden of proof of showing that respondent's investigation was undertaken in bad faith because undertaken solely for criminal purposes. *533 Neither do we believe that the Internal Revenue Service was made a cat's paw of the INS. The INS already had closed its file by the time Malichiwski began his examination. Moreover, as Remstein testified, respondent and his agents are prohibited from making unauthorized disclosures of information that they acquire during the course of an examination. They are subject to criminal penalties for violating that prohibition. See sec. 7213(a)(1). In fact, there is no evidence that the INS received any information from Malichiwski's examination. Moreover, it did not participate in that investigation. For all of the above reasons, we conclude that the Internal Revenue Service did not become an information-gathering agency for the INS. Petitioners have not carried their burden of proof in showing bad faith in that respect. We thus reject petitioners' claim that respondent abused his examination authority and thereby violated the Fourth Amendment. II Petitioners next contend that respondent violated their Fourth Amendment rights by obtaining a consent search through fraud, misrepresentation, and trickery. Specifically, petitioners claim that Malichiwski intentionally misled petitioners *534 about the nature of the audit when he said that the audit "came down through channels" and that it was chosen "through the system." That was misleading, claim petitioners, since respondent had a hidden, two-fold purpose in undertaking the examination of CMEM: One, to assist INS in developing evidence to obtain a search warrant for the basement of the Golden Dove, so that INS could bring a criminal case against petitioners for harboring illegal aliens; two, to help respondent's Inspection Service develop evidence in connection with an investigation of bribery attempts by diner owners. Relying on case law that a consent search obtained through misrepresentation is an unreasonable search, petitioners argue that respondent's misrepresentations resulted in an unreasonable search. Therefore, petitioners argue, since all the information supporting the notices of deficiency arose from the unreasonable consent search, all of that evidence should be suppressed. Petitioners are correct in their contention that a consent search obtained through misrepresentation is an unreasonable search: "It is elementary that evidence obtained through the 'fraud, trickery, and deceit' of revenue agents is *535 not admissible in criminal tax prosecutions." United States v. Powell, 835 F.2d 1095, 1098 (5th Cir. 1988). (Citation omitted.) However, the burden is on petitioners to show that respondent made an intentional and material misrepresentation regarding the nature of the investigation. Id. That burden is substantial. In United States v. Caldwell, 820 F.2d 1395 (5th Cir. 1987), the Court held that "Caldwell [movant] must show by clear and convincing evidence that the IRS agents made material misrepresentations about the nature of the inquiry." 820 F.2d at 1399. See United States v. Okwumabua, 828 F.2d 950, 953 (2d Cir. 1987) (holding that movant "must produce clear and convincing evidence that the agents affirmatively misled him as to the true nature of the investigation"); United States v. Mast, 735 F.2d 745, 750 (2d Cir. 1984) (holding that suppression of evidence is not appropriate unless the Government agent is "affirmatively attempting to mislead [defendant] about the nature of the investigation"). Petitioners have failed to show by clear and convincing evidence that Malichiwski made an affirmative and material misrepresentation regarding the nature *536 of his investigation. Even granting (which we do not) that respondent's investigation had the two-fold purpose attributed to it by petitioners, we cannot conclude that Malichiwski's answers to CMEM's accountant's (Reis's) questions as to how the examination was initiated materially misrepresented the "nature" of the investigation. Whether the investigation was motivated by suspicions of criminality or not, Malichiwski's responses were accurate. We assume that even where there are criminal suspicions, the direction to audit "comes down through channels" or, in some way, is chosen "through the system." Malichiwski answered Reis's questions by stating how he got the case. That does not amount to a material, affirmative misrepresentation. At most, Malichiwski can be accused of trying to avoid answering the question. However, there is no requirement that an investigating agent must inform the subject of every detail surrounding the examination. See United States v. Sclafani, 265 F.2d 408, 414-415 (2d Cir. 1959) (holding that a Federal agent is not required to notify an examination's subject of the potential criminal liabilities that could possibly flow from that civil investigation). *537 Moreover, simply because an examination had its origins in criminal suspicions does not mean that the audit itself has a criminal purpose. United States v. Nuth, 605 F.2d 229 (6th Cir. 1979); United States v. Robson, 477 F.2d 13 (9th Cir. 1973). That it did not, at least with regard to petitioners' claim with regard to the INS's interest, is evidenced by the fact that the INS closed its file prior to Malichiwski's beginning his examination. With regard to respondent's Inspection Service's interest, although there may have been some suspicion of the future possibility of a bribe, certainly there was no already-committed offense at issue. For the foregoing reasons, we reject petitioners' claim that by obtaining a consent search through fraud, misrepresentation, and trickery respondent violated the Fourth Amendment. [6]
*538 III Petitioners next argue that respondent violated the Due Process clause of the Fifth Amendment by violating the procedures set forth in the Internal Revenue Manual (IRM). Petitioners offer four instances where respondent's alleged violations of IRM procedures would merit suppression: (1) respondent's method of selecting petitioners for an audit and the subsequent manner in which the Examination Division "rubber stamped" its approval of the file for audit; (2) respondent's conduct in executing the audit, i.e., Malichiwski's two pre-audit site inspections and "misrepresentations" concerning the audit; (3) that Remstein destroyed or lost his case file without authorization; and (4) that Malichiwski impermissibly delayed his referral of the case to CID. Petitioners contend that those four instances of conduct violated respondent's IRM procedures and reflected willful Government misconduct and institutional bad faith. Further, they allege that those procedures are designed to protect petitioners' constitutional rights to privacy, so that violations of these rules constitute a violation of due process. In United States v. Caceres, 440 U.S. 741, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979), the Supreme Court stated *539 that if a Federal agency's procedural rules are mandated by the Constitution, or a statute, then a violation of those rules is a violation of due process and merits suppression of any evidence thus obtained. However, the Court also went on to hold that if the procedural rules were not required by a statute or the Constitution, then a violation of those rules did not merit suppression. See Riland v. Commissioner, 79 T.C. 185, 201-202 (1982) (following Caceres and holding that respondent's violations of IRM procedures did not justify suppression of evidence unless the procedures were mandated by the Constitution or a statute or the taxpayer had suffered injury by reasonably relying upon respondent to adhere to procedures); Vallone v. Commissioner, 88 T.C. 794, 807-809 (1987) (holding that, when the IRM procedures are not mandated by the Constitution or a statute but are merely intended to govern the internal affairs of respondent, then a violation of those procedures does not amount to a violation of a person's constitutional rights and, thus, any evidence gained should not be suppressed). We find no grounds for suppression in any of these alleged IRM violations. Each *540 argument will be looked at in turn. Regarding the steps that led to an examination of petitioners' returns, petitioners have failed to persuade us that there occurred any violation of IRM procedures. Petitioners' brief describes in negative terms the steps that led to the examinations in question but does not with any particularity describe violations of IRM procedures. Petitioners' reply brief discusses what appear to be goals and guidelines contained in the IRM but, again, does not show particular and specific violations of rules found in the IRM. More importantly, we conclude that the steps that led to the examination of petitioners' returns, even if IRM procedures were violated, do not merit suppression in any event. The procedures governing those actions are not required by the Constitution or any statute, but are intended to be mere internal governing mechanisms. Petitioners have shown no reliance on those procedures. Thus, a violation of the procedures would not merit suppression. See Riland v. Commissioner, supra.
We do not find that Malichiwski's pre-audit inspections of the diner merit suppression. First, petitioners here rely on II Audit, Internal Revenue *541 Manual (CCH), sec. 4235-6(10)0 at 7291-97, incorrectly. IRM 4235-6(10)0 prescribes conduct for constant surveillance of a taxpayer's movements over a substantial period; it does not prescribe the procedures for a cursory inspection of a taxpayer's premises before commencing an audit. Thus there is no violation of IRM 4235-6(10)0. Regarding Remstein's missing file, petitioners have failed to show any genuine injury from that claimed violation. Further, the requirement that an agent maintain a file for a certain period in a civil proceeding is not mandated by statute or the Constitution, nor have petitioners shown any reliance. Finally, we find that Malichiwski did not impermissibly delay his referral of the case to respondent's Criminal Investigation Division (CID). A revenue agent must refer a case to CID upon a firm indication of fraud. I Audit, Internal Revenue Manual (CCH), secs. 4231-981 at 247-35, 4564 at 8177-29. That procedure is discretionary and is not required by the Constitution or a statute. Groder v. United States, 816 F.2d 139, 142-143 (4th Cir. 1987); United States v. Lockyer, 448 F.2d 417, 421 (10th Cir. 1971). However, even if the procedures were *542 required by the Constitution or a statute, petitioners have failed to show that Malichiwski delayed the referral beyond the point when he had a firm indication of fraud. Malichiwski exercised his best judgment about whether there was a firm indication of fraud, and, since the procedure is discretionary, we will not second guess an agent's decision unless there is a clear indication that the revenue agent was in error. United States v. Caldwell, 820 F.2d 1395, 1402 (5th Cir. 1987); Groder v. United States, 816 F.2d 139, 142-143 (4th Cir. 1987); United States v. Matis, 476 F. Supp. 1287, 1292-1293 (S.D. N.Y. 1979). IV Finally, petitioners argue that the Court must grant their motions in order to preserve judicial integrity. Petitioners say that the evidence supporting the notice of deficiency was obtained in a manner so inconsistent with American standards of justice that judicial integrity would be called into question if the evidence were admitted. In a number of cases, the Supreme Court has held that courts have an inherent supervisory power to exclude evidence when that evidence was obtained illegally. See Elkins v. United States, 364 U.S. 206, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960); Rea *543 v. United States, 350 U.S. 214, 100 L. Ed. 233, 76 S. Ct. 292 (1956); McNabb v. United States, 318 U.S. 332, 345, 87 L. Ed. 819, 63 S. Ct. 608 (1943). However, the Court has refused to exercise that power except to remedy the most flagrantly illegal Government activity.[7] Petitioners have not persuaded us that respondent's behavior falls in that category. Petitioners have not shown that respondent violated any statutes, regulations, or constitutional rights. As petitioners have failed to provide us with adequate justification for exercising our supervisory power, we decline to do so. Conclusion
As we have found that respondent did not violate petitioners' constitutional rights, petitioners' motions will *544 be denied. Since petitioners have stated no grounds other than the stated and rejected constitutional grounds for opposing respondent's motions, respondent's motions will be granted. An appropriate order will be issued. Footnotes
1. Cases of the following petitioners are consolidated herewith: CMEM, Inc., d/b/a Golden Dove Restaurant, docket No. 1548-89; CMEM, Inc., d/b/a Golden Dove Diner, Michael Theodoulou and Evangelia Theodoulou, docket No. 13579-89.↩
2. The investigation of Stravakis, of which Remstein was a part, ended with 30 separate bribery cases being prosecuted, involving over one-half million dollars in bribes. Stravakis was prosecuted and convicted of criminally violating Federal law.↩
3. Unless otherwise noted, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.↩
4. This is not a summons enforcement procedure, where the burden of showing bad faith shifts to the party opposing enforcement only after the movant makes a preliminary showing that the investigation has a legitimate purpose, the inquiry may be relevant to that purpose, the information is not already in the Government's possession, and the procedural steps required by the Code have been followed. See United States v. White, 853 F.2d 107, 111 (2d Cir. 1988); United States v. McCarthy, 514 F.2d 368, 372-373 (3d Cir. 1975); United States v. Genser, 582 F.2d 292, 302 (3d Cir. 1978). Were this such a summons enforcement procedure, we believe that, based on the testimony presented by Remstein, Malichiwski, and others, respondent has made the necessary preliminary showing. Nevertheless, since petitioners have raised the Fourth Amendment claim, we believe that it is consistent with United States v. LaSalle National Bank, 437 U.S. 298, 316, 57 L. Ed. 2d 221, 98 S. Ct. 2357↩ (1978), to impose on them the burden of showing bad faith.
5. Sec. 7602(b) was added by sec. 333(a), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 622, to expand the civil summons authority to include the stated purposes. See S. Rept. 97-494 at 285-287 (1982). Petitioners have not shown that, even if respondent had no sec. 7602(a) purpose of determination or collection of taxes, sec. 7602(b)↩ would not have provided a proper purpose, viz, to investigate offenses connected with the administration or enforcement of the internal revenue laws. This point was not addressed on brief by either party.
6. Additionally, we point out that even if there were a Fourth Amendment violation, the case before us is a civil case, where the remedy of exclusion has seldom been deemed appropriate. See Jones v. Commissioner, 97 T.C. 7 (July 3, 1991). Determining the appropriateness of exclusion requires a " weighing of the likely social benefits * * * against the likely costs." INS v. Lopez-Mendoza, 468 U.S. 1032, 1041, 82 L. Ed. 2d 778, 104 S. Ct. 3479 (1984). Where, as here, the remedy of exclusion from criminal proceedings provides a substantial deterrent to illegal searches and seizures, the added deterrent effect -- and hence the benefit -- of excluding such evidence from civil proceedings as well is comparatively slight. See United States v. Janis, 428 U.S. 433, 448, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976). Consequently, it would be the rare instance in which the benefit of such minimal added deterrence outweighs the high cost of less accurate and more cumbersome trials. Thus, even if there were, in the case before us, a Fourth Amendment↩ violation, it is unlikely that exclusion would be an appropriate remedy.
7. In holding that the supervisory power to suppress evidence was not an appropriate remedy for the violation of a third party's constitutional rights, the Court discussed its supervisory power in general terms, stating: "We merely reject its use as a substitute for established Fourth Amendment doctrine." United States v. Payner, 447 U.S. 727, 736 n.8, 65 L. Ed. 2d 468, 100 S. Ct. 2439↩ (1980).